# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2080
_____

Michael Blaes

*Plaintiff - Appellee*

v.

Johnson & Johnson; Johnson & Johnson Consumer Companies, Inc.; Imerys Talc America, Inc., formerly known as Luzenac America

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: March 9, 2017
Filed: May 26, 2017
_____

Before RILEY,[1] Chief Judge, GRUENDER, Circuit Judge, and SCHREIER,[2] District Judge.
_____

SCHREIER, District Judge.

---

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

Defendants appeal from the district court's order dismissing without prejudice Michael Blaes's products liability action. Defendants claim that the court should not have granted the dismissal because Blaes was forum shopping. In the alternative, defendants contend that dismissal should have been conditioned on the payment by Blaes of defendants' costs and fees. We find that the district court did not abuse its discretion when it dismissed the complaint without prejudice, but the district court should have analyzed whether costs and fees should have been awarded. We affirm in part, reverse in part, and remand with instructions.

## I. Background

Shawn Blaes passed away from ovarian cancer on January 12, 2011. Her husband, Michael Blaes, contends that Shawn's death was caused by her regular and prolonged use of talcum-based products known as JOHNSON'S Baby Powder® and Shower-to-Shower®. On January 10, 2014, Blaes filed a complaint in Missouri state court in St. Louis County against Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc. (Johnson & Johnson); Imerys Talc America, Inc. (Imerys); Personal Care Products Council; Schnucks, Inc.; Schnucks Supermarkets, Inc.; Schnucks Food & Drugs, Inc.; Schnucks Super Centers, Inc.; and Walgreen Co.

Defendants timely removed the case to the United States District Court, Eastern District of Missouri. Blaes later voluntarily dismissed the Schnuck defendants, Walgreen Co., and Personal Care Products Council. On October 24, 2014, the district court scheduled the case for a two-week jury trial to start on March 7, 2016. On February 12, 2016, the district court held a status conference during which Blaes orally requested a continuance of the March 7, 2016, trial date. Blaes advised the court that a case with similar facts (*Fox* trial[3]) was currently in progress in the Circuit Court

---

[3] *Hogans v. Johnson & Johnson,* 1422-CC09012-01. In *Hogans*, 64 individuals and one St. Louis City resident joined and filed suit in the Circuit Court of the City

of the City of St. Louis and would take longer than two weeks to complete. Thus, Blaes believed that his trial would take longer than two weeks and would need to be moved to a new date to accommodate a longer trial. The court denied the oral request for a continuance, but stated that it would monitor the progress of the ongoing *Fox* trial. On February 18, 2016, the district court entered an order resetting the trial date to July 6, 2016, to accommodate a longer trial. On February 22, 2016, the jury in the *Fox* trial awarded Fox $10 million in compensatory damages and $62 million in punitive damages.

On March 9, 2016, defendants moved to reset the July 6, 2016, trial date because it conflicted with another talcum powder case that had previously been scheduled for trial in New Jersey. Defendants explained that, in total, counsel were scheduled for six talcum powder trials starting in April 2016 and running through February 2017, so they would be unavailable for trial in this case until after February 2017. One of the trials defendants listed was *Swann v. Johnson & Johnson* that was scheduled for trial in January 2017 in the Circuit Court of the City of St. Louis. On March 11, 2016, Blaes filed a Motion to Voluntarily Dismiss this action. Defendants opposed the motion asserting that Blaes was improperly forum shopping. Defendants argued that Blaes was seeking to refile in the Circuit Court of the City of St. Louis because a St. Louis jury had just awarded a large plaintiff's verdict and the district court in this case had made several unfavorable *Daubert* rulings against Blaes. On March 25, 2016, Blaes filed a Reply in Support of his Motion to Voluntarily Dismiss in which he explained that he planned to refile the case in the Circuit Court of the City of St. Louis and stated that the case could be tried "starting January 9, 2017, as one of multiple consolidated trial plaintiffs in *Swann v. Johnson & Johnson*." On March 29, 2016, the district court granted Blaes's motion to dismiss finding that dismissal was

---

of St. Louis. The first trial was of Jacqueline Fox's claims. Thus, this trial is referred to as the *Fox* trial.

proper "because this case will likely be refiled and consolidated with *Swann v. Johnson & Johnson, et al.*"

## II. Discussion

"We review a district court's decision to allow a plaintiff to voluntarily dismiss an action for an abuse of discretion." *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013). The district court "has a range of choice, and [] its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984). When deciding whether to grant a motion for voluntary dismissal, the "district court should consider . . . 'whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants.'" *Donner*, 709 F.3d at 697 (quoting *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011)). A plaintiff cannot use a motion to voluntarily dismiss to seek a more favorable forum. *Id.*

Defendants contend the district court abused its discretion in granting the voluntary dismissal because the dismissal wasted judicial time and effort and prejudiced the defendants, did not address whether the motion was improper forum shopping or whether Blaes's basis for dismissal had a reasonable basis in fact and law, and should have included an award of costs in favor of defendants. Defendants also argue that the court abused its discretion when it considered Blaes's arguments for voluntary dismissal because they were raised for the first time in his reply brief.

First, this court must analyze whether the district court abused its discretion in concluding that dismissal would not waste judicial time and effort and would not prejudice defendants. This court has previously held that when a court dismisses an action to be refiled in state court, judicial time and effort are not wasted where much of the evidence may be used in state court. *See Kern*, 738 F.2d at 971(dismissing a

-4-

case after the trial began so it could be refiled in state court). Legal prejudice is more than the fact that a defendant might have to defend another action. *Id.* at 970. Neither "the expense and effort of drafting and responding to discovery" nor the loss of a tactical advantage constitute legal prejudice. *Mullen v. Heinkel Filtering Sys., Inc.*, 770 F.3d 724, 728 (8th Cir. 2014).

Defendants argue that the dismissal was a waste of judicial time and effort because the parties had prepared for trial for over two years, and the court had already overseen discovery and considered some pretrial motions. Defendants also argue that they were substantially prejudiced by the dismissal because they were deprived of benefitting from the work they had already completed, the favorable rulings the district court had already issued, and access to a federal forum. In *Kern*, the plaintiff filed a motion to voluntarily dismiss prior to trial, and the district court informed counsel that it would grant the motion, but "only upon the express condition that, if the case is refiled in any court, the defendant will be awarded all costs." *Kern*, 738 F.2d at 969. Plaintiff then withdrew her motion. *Id.* At trial, the court and counsel conferred with each other prior to calling plaintiff's final witness, and the court "informally indicated the view that plaintiff would be unable to make out a submissible fact question for the jury." *Id.* at 970. The plaintiff then renewed her motion to dismiss without prejudice, and the court granted the motion without any conditions as to costs and expenses. *Id.* We upheld the district court's dismissal because plaintiff had not rested, the defendant had not moved for a directed verdict, and the dismissal allowed for a state-law issue to be decided by a state court. *Id.* at 971.

In *Mullen*, after the plaintiffs failed to meet the expert disclosure deadline and the court ruled that the deadline would not be extended, plaintiffs filed a motion to dismiss without prejudice stating that they intended to add defendants who would "more than likely" destroy diversity. *Mullen*, 770 F.3d at 726-27. The judge granted the motion to dismiss without stating a reason for the dismissal but indicated that the case was plagued with discovery disputes. *Id.* at 727. The court did not award any fees

to the defendants and ordered the parties to bear their own costs. *Id.* We upheld the district court's decision because the parties had completed very little discovery, and after the dismissal, the plaintiffs did refile the suit in state court adding a diversity destroying defendant. *Id.*

Here, the district court reasoned that it would be more efficient to add this case to the multi-plaintiff *Swann* case with the same issues. The district court did not abuse its discretion in reaching that conclusion. The trial in this case had not commenced, the district court had not ruled on several *Daubert* and other pre-trial motions, much of the discovery and evidence could be used in state court, and the *Swann* case apparently dealt with the same type of ovarian cancer as this case and involved much of the same evidence.

Also, the district court observed that defendants had moved to reset the July 2016 trial date, but defendants were unavailable for the remainder of 2016. Thus, the trial would have to be rescheduled for sometime in early 2017. In their motion, defendants indicated that "no party will be prejudiced by moving the trial date." Docket 261. And defendants identified the *Swann* trial as one of the previously scheduled trials that created a conflict for defendants. Thus, the district court reasonably concluded that the case would likely be tried at an earlier date in state court, and the dismissal would not prejudice defendants because Blaes's case would be consolidated with a previously scheduled trial. We find that the district court's reasoning fell within its range of choices and was not an abuse of discretion.

Second, this court must determine whether the district court properly considered Blaes's motivation behind his motion to dismiss. This court has previously held that it was an abuse of discretion when the district court failed to consider whether a motion to dismiss was being used for the improper purpose of avoiding an unfavorable ruling and seeking a more favorable forum. *Thatcher*, 659 F.3d at 1215. To consider

whether a motion to dismiss is improper, the district court must address the plaintiff's purported reason for the voluntary motion to dismiss. *Donner*, 709 F.3d at 697.

Defendants argue that the district court did not consider whether Blaes was engaging in improper forum shopping, and thus, it abused its discretion. As support, defendants rely on this court's decisions in *Donner* and *Thatcher*. In *Thatcher*, plaintiff filed a motion to voluntarily dismiss without prejudice stating that he intended to refile in state court with an amended complaint that would avoid federal jurisdiction. *Thatcher*, 659 F.3d at 1213. The district court granted the motion to dismiss without addressing plaintiff's stated reason for the dismissal. *Id.* This court found that the district court abused its discretion because the plaintiff stated that he intended to try to avoid federal jurisdiction by amending his complaint and the district court did not discuss it. *Id.* at 1214-15. We reasoned that the district court should have addressed plaintiff's purpose in seeking dismissal because "[i]f the trial court had done so, it could have concluded that Thatcher was dismissing so he could return to the more favorable state forum." *Id.*

In *Donner*, the plaintiff filed a motion to dismiss stating that he planned to add a diversity-destroying defendant and refile in state court. *Donner*, 709 F.3d at 696. Because the plaintiff did not have a viable claim against the proposed diversity destroying defendant, we concluded that the plaintiff's true purpose was to seek a more favorable forum. *Id.* at 697. Thus, the district court abused its discretion when it did not analyze whether the plaintiff's claim against the diversity-destroying defendant had any basis in fact and law. *Id.*

Here, the district court specifically addressed Blaes's proposed reason for dismissing the action—in contrast to the court in *Thatcher*. The district court stated that Blaes's reason was proper, would not waste judicial time and effort, and would not prejudice defendants. But defendants argue that, because the court did not specifically state that Blaes was not forum shopping, the court did not consider

-7-

whether Blaes was forum shopping. "An appellate court must be mindful that the district courts are closer to the facts and the parties, and that not everything that is important about a lawsuit comes through on the printed page." *Kern*, 738 F.2d at 970. Where the parties have submitted arguments opposing and supporting the motion to voluntarily dismiss, the relevant factors are before the court. *Mullen*, 770 F.3d at 728. In defendants' response to the motion to dismiss, defendants argued that Blaes's purpose behind the motion was to refile in a more favorable forum. Thus, the district court considered both Blaes's stated reason for wanting to dismiss the action and refile in state court and defendants' argument that Blaes was forum shopping. By finding that Blaes's stated purpose was proper, the district court implicitly rejected defendants' argument that Blaes was forum shopping. Thus, we find that the district court properly considered Blaes's purpose for dismissal and did not abuse its discretion.

Defendants contend that this case is similar to *Donner* because the City of St. Louis is not a proper venue for Blaes's case, and therefore the district court abused its discretion by not considering whether Blaes's plan to refile had any basis in fact or law. But unlike the facts in *Donner* where plaintiff did not have a valid claim against the diversity-destroying defendant, Blaes is currently joined with the *Swann* case in the City of St. Louis. Thus, it was not an abuse of discretion for the district court to come to the same conclusion. Furthermore, if there is a dispute as to the interpretation of Missouri's venue statutes, then granting Blaes's motion to dismiss allowed the parties to seek a binding state-court decision on the disputed interpretation.

Defendants allege that they were prejudiced because they were deprived of their right to a federal forum. Defendants rely on *B.S. ex rel. Soderberg v. Forest Laboratories, Inc.*, No. 2:15-cv-4002-NKL, 2015 WL 4135508 (W.D. Mo. July 8, 2015), and *Wingo v. State Farm Fire & Cas. Co.*, 2013 WL 4041477 (W.D. Mo. August 8, 2013), as support. But in both of those cases the courts denied the motions to dismiss because they found that the plaintiff's purpose was improper, not because

the plaintiff had a right to a federal forum.[4] Defendants do not cite any support for their contention that a motion to dismiss should be denied only because the defendants would be deprived of a federal forum. The law allows a court to grant a voluntary motion to dismiss so long as it is not wasteful or prejudicial or for the purpose of forum shopping. *Thatcher*, 659 F.3d at 1213-14.

Defendants also argue that Blaes's motion should have been denied because Blaes did not provide a reason for seeking voluntary dismissal until his reply brief. One factor that the district court should consider when deciding a motion to dismiss is whether the plaintiff has presented a proper explanation for his reason to dismiss. *Id.* Blaes did not offer an explanation for his motion to dismiss until his reply brief.

---

[4]In *Soderberg*, the plaintiffs filed their case in the District Court in the District of New Jersey. *Soderberg*, 2015 WL 4135508, at *1. The plaintiffs then filed a motion to voluntarily dismiss without prejudice, and the court granted the dismissal over the defendants' objections. *Id.* The plaintiffs then filed in the Circuit Court of Cole County in Missouri, and defendants removed it to the District Court in the Western District of Missouri. *Id.* The plaintiffs filed another motion to voluntarily dismiss without prejudice stating that they planned to proceed as part of consolidated litigation, but they did not state where they planned to refile. *Id.* at *2. The district court noted that there was consolidated litigation about the same pharmaceutical drug in two counties in New Jersey and in St. Louis, Missouri, but the plaintiffs had not refiled in either place. *Id.* Thus, the district court reasoned that the true motivation behind the second motion to dismiss was to refile in a more favorable forum, and the district court denied the motion. *Id.*

In *Wingo*, the plaintiff filed a motion to dismiss stating that he could refile in state court with an amended complaint that would avoid federal jurisdiction. *Wingo*, 2013 WL 4041477, at *1. The district court compared the posture of the case to the posture in *Thatcher*. *Id.* The court stated that "[i]n *Thatcher*, as here, the expressed intent of the plaintiff was to amend his complaint in order to avoid federal jurisdiction," and that the voluntary motion to dismiss was improper forum shopping. *Id.* Thus, the court in *Wingo* denied the motion to dismiss because it was made with the intent to seek a more favorable forum. *Id.*

In general, the purpose of a reply brief is to "respond to the statement of facts and arguments of the appellee's brief." 5 Am. Jur. 2d Appellate Review § 517 (2017). It was not improper for the district court to consider the reasons stated in Blaes's reply brief because Blaes was responding to defendants' arguments against granting the motion. Thus, it was not an abuse of discretion for the district court to consider the information presented in Blaes's reply brief.

Finally, this court must decide whether the district court abused its discretion because it did not address whether its grant of dismissal should be conditioned on Blaes paying defendants' costs and expenses. "[P]ayment to the defendant of the expenses and a reasonable attorney fee may properly be a condition for dismissal without prejudice under Rule 41(a)." *Kern*, 738 F.2d at 972. "The time and effort invested by the parties, and the stage to which the case had progressed" are the most important factors to consider when the court decides whether to grant a dismissal with conditions. *Id.* In *Kern*, this court found that it was an abuse of discretion not to award defendant costs and fees when the trial had already commenced. *Id.* at 972.

Here, the parties spent two years working on the case and the court had ruled on several *Daubert* motions. Defendants argue that they requested the district court to at least condition the dismissal on Blaes paying defendants' costs and fees, but the district court failed to address the request, which amounts to an abuse of discretion. We agree that the amount of effort invested and the stage to which the case had progressed required an analysis of whether costs and expenses should be awarded. Thus, we remand to the district court for an evaluation of whether costs and fees should be assessed and the amount, if any.

Finally, there are several motions pending before this court. Blaes's motion to supplement the record, Blaes's motion to take judicial notice, and Johnson and Johnson's motion to supplement the record are granted. Johnson and Johnson's emergency motion to enjoin is denied as moot.

## III. Conclusion

The order of the district court, to the extent that it dismissed the complaint without prejudice, is affirmed. The decision not to impose conditions is reversed, and we remand to the district court to analyze whether costs and fees should be assessed and the amount, if any.

Also, Blaes's motion to supplement the record, Blaes's motion to take judicial notice, and Johnson and Johnson's motion to supplement the record are granted. Johnson and Johnson's emergency motion to enjoin is denied as moot.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

Because I believe the district court abused its discretion by failing to address the issue of forum shopping in its grant of voluntary dismissal, I respectfully dissent from the bulk of the court's opinion. While I would find it unnecessary to reach the alternative question of whether the district court likewise abused its discretion in granting dismissal without explaining why costs and fees were not awarded, given the court's holding on the first issue, I agree that it was impermissible for the district court to ignore this consideration and, thus, join that portion of the opinion.

Appellee Michael Blaes initially brought this product-liability action against nine corporate defendants in the Circuit Court of St. Louis County, alleging that his wife died from ovarian cancer caused by various products containing talcum powder. The defendants were served on January 24, 2014 and timely removed the case to federal district court. After initially moving to remand based on a lack of complete diversity, Blaes conceded that his claims against the diversity-destroying defendants were barred by the Innocent Seller Statute, dismissed these claims, and withdrew his request to return to state court. *See* Mo. Rev. Stat. § 537.762. Thereafter, the only remaining defendants were two Johnson & Johnson entities and Imerys Talc America,

Inc. (collectively, "J&J"). The district court then entered a case-management order, setting a jury trial to begin on March 7, 2016. Over the intervening months, the parties completed twenty-four depositions, fully briefed J&J's *Daubert* and summary judgment motions, and resolved several other issues through motions practice. Of note, the district court denied Blaes's motion to compel entry to several J&J facilities and granted J&J's motions to strike two of Blaes's expert witnesses.

On January 28, 2016, the attorneys in this matter began a separate multi-plaintiff trial involving similar talcum-power product-liability claims in the Circuit Court of the City of St. Louis. The case, *Hogans v. Johnson & Johnson*, joined sixty-four unrelated individuals from twenty-nine states with one St. Louis City resident. No. 1422-CC09012-01 (Mo. Cir. Ct. 22d Sept. 29, 2014). Because the first trial focused on Alabama resident Jacqueline Fox's claims, this litigation is often associated with her name. After the *Fox* trial was underway, Blaes's counsel approached J&J with multiple requests to postpone the trial date. The defendants refused, however, insisting that the case was ready for trial.

Blaes then requested—and the district court ordered—a status conference to occur on February 12, 2016. At the meeting, the court informed Blaes's counsel that they would be allowed only two or three expert witnesses and that, in light of prior talcum-powder trials, the case should be streamlined. The court also noted that Blaes should not elicit repetitive testimony on the same issues. After receiving this guidance, Blaes asked for a continuance with leave to reopen discovery. The district court granted this request and entered an order resetting trial for July 6, 2016.

On March 9, 2016, J&J moved to reset Blaes's trial date due to a scheduling conflict with another talcum-powder trial setting in New Jersey.[5] Blaes responded

---

[5]The court reads this filing to suggest that J&J "would be unavailable for trial in this case until after February 2017." *Ante*, at 3. Yet the basis for this conclusion

-12-

with a motion to voluntarily dismiss the case without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). The motion failed to include any justification as to why dismissal was appropriate, but it is telling that the *Fox* jury found against J&J only two weeks earlier and awarded Fox $10 million in compensatory damages and $62 million in punitive damages. J&J opposed dismissal, arguing that the case was ready for trial, that the court had already excluded two experts, and that Blaes's primary reason for dismissing the case was forum shopping. J&J alternatively requested that the district court impose several conditions on dismissal, including that Blaes pay its fees and costs. In his reply brief, Blaes confirmed that he intended to refile in state court, stating that he "believe[d] he [could] try his case starting January 9, 2017 as one of multiple consolidated trial plaintiffs" in *Swann v. Johnson & Johnson*—another multi-plaintiff talcum-powder case pending in the St. Louis City Circuit Court. *See* No. 1422-CC09326-01 (Mo. Cir. Ct. 22d Dec. 5, 2014).

Four days later, before J&J could seek leave to file a sur-reply, *see* E.D. Mo. L.R. 4.01(C), the district court granted Blaes's motion to dismiss. In a two-page memorandum, the court suggested that dismissal was proper "because this case will likely be refiled and consolidated with *Swann* . . . [and] it makes sense for the state court to hear a multi-plaintiff trial regarding the same type of ovarian cancer." Yet the court failed to mention J&J's forum-shopping claim, and it discussed only scheduling considerations in concluding that dismissal would not prejudice J&J.

J&J timely appealed this order. Meanwhile, the St. Louis City Circuit Court granted the *Swann* plaintiffs leave to file an amended petition adding Blaes and eleven other non-residents as intervenors. As J&J notes, however, the *Swann* court also ordered that the January 9, 2017 trial would be a single-plaintiff trial chosen by defendants, thereby undermining Blaes's efficiency rationale for dismissal of this case.

is unclear to me, as it appears that J&J's schedule left sufficient time for a three-week trial in August and September or October through December of 2016.

-13-

To date, nearly fourteen months after the district court granted Blaes's motion to dismiss, his trial still has not commenced in the St. Louis City Circuit Court.

My primary concern with the court's approach is that it harkens back to an overly permissive standard for voluntary dismissals that we long ago abandoned. "At common law, dismissals without prejudice were, in general, freely allowed at any time before the case was ready for decision." *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984). However, "[t]he adoption of Rule 41(a) in 1938 completely changed this practice. The rule limits the right of dismissal at the behest of the plaintiff to the early stages of the proceedings, thus curbing the abuses of this right that commonly had occurred under [the earlier approach]." 9 Charles Alan Wright et al., *Federal Practice and Procedure* § 2363 (3d ed. 2017). Thus, the current version of Rule 41(a)(2) provides that, after a defendant serves its answer, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." We have previously held that district courts entertaining such requests must consider: "[1] whether the party has presented a proper explanation for its desire to dismiss; [2] whether a dismissal would result in a waste of judicial time and effort; and [3] whether a dismissal will prejudice the defendants." *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013) (citation omitted).

J&J's main argument is that the district court abused its discretion in granting dismissal without sufficiently examining the first of these factors—whether Blaes had presented a proper explanation for his request. Specifically, J&J contends that the district court was required to examine the viability of Blaes's plan to dismiss and refile and whether his real motive was to defeat its attempt to remove the case to a federal forum, particularly in light of the $72 million judgment in *Fox* and Missouri's relatively lax expert-witness standard. *See State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 153, 155-56 (Mo. 2003) (en banc) (holding that Mo. Rev. Stat. § 490.065, rather than *Daubert*, supplies the standard for the admission of expert testimony in civil cases in Missouri). I share this concern and believe that,

-14-

at the very least, the district court should have addressed J&J's forum-shopping argument.

We have repeatedly held that "a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum," *Donner*, 709 F.3d at 697 (citations omitted), and we have reversed a number of orders granting motions for voluntary dismissal when the overall circumstances indicate forum shopping as a motive, *see, e.g.*, *id.* at 699 (listing cases). As we explained in *Thatcher v. Hanover Insurance Group, Inc.*, this rule is particularly important in the removal context because the rule against voluntary dismissal for a more favorable forum "coincides with other measures which strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court." *See* 659 F.3d 1212, 1214 (8th Cir. 2011) (citations and internal quotation marks omitted). Thus, given that the district court's decision to grant dismissal effectively overrode J&J's right to remove this case to federal court, it is especially problematic that the district court failed to address J&J's forum-shopping claim.

The court avoids this difficulty by suggesting that "the district court implicitly rejected defendants' argument that Blaes was forum shopping," apparently by finding that dismissal would advance both parties' interest in a speedy trial. *Ante*, at 7. As an initial matter, I note that Blaes provided absolutely no reason for dismissal in his initial motion. *See Donner*, 709 F.3d at 699. Only in reply to J&J's motion in opposition to dismissal did Blaes finally assert his timeliness and efficiency justifications for allowing him to refile in state court. However, I am not convinced that, "[b]y finding that Blaes's stated purpose was proper," the district court was entitled to conclude that he necessarily was not forum shopping. *Id.* A plaintiff certainly could assert a legitimate reason for voluntary dismissal while his or her true motive lay in securing a more favorable forum. Further, I reject the notion that we automatically should deem an argument to have been considered by a district court simply because it was raised in briefing. Otherwise, it is unclear to me how we ever

-15-

could find that the court had abused its discretion by failing to consider "a relevant factor that should have been given significant weight." *See Mullen v. Heinkel Filtering Sys., Inc.*, 770 F.3d 724, 727-28 (8th Cir. 2014).

Most importantly, however, even assuming that allowing Blaes to refile in state court would result in a faster and more efficient trial, the court fails to recognize that granting dismissal also defeated J&J's right to a federal forum. Based on the jurisdictional nature of this consideration, we have previously held that district courts must address forum-shopping concerns before granting a motion to dismiss:

> [T]he determination of whether the motion to dismiss was an improper forum-shopping measure, by its very nature, called into question the trial court's subject matter jurisdiction. Defendants exercised their right to removal under [diversity jurisdiction], and [the plaintiff] appears to have sought dismissal merely to deprive the federal court of jurisdiction. As a result, determining whether the district court had subject matter jurisdiction was at the crux of the issue of whether the motion to dismiss was being used for the improper purpose of seeking a more favorable forum. The district court erred in failing to take up the jurisdictional question, thereby necessitating remand of this matter.

*Thatcher*, 659 F.3d at 1215.[6] Indeed, if there is any question about the importance of an out-of-state defendant's right to remove a case from state court or the fundamental nature of federal diversity jurisdiction, one need look no further than Article III of the Constitution and the ratification debates.

---

[6]Our previous opinions in *Kern v. TXO Production Corp.* and *Mullen v. Heinkel Filtering Systems, Inc.* appear to support the court's position at first glance. However, there was no forum-shopping concern raised in *Kern*, and our decision in *Thatcher* controls as an earlier-in-time opinion to the extent it conflicts with *Mullen*. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel . . . [and as such,] when faced with conflicting panel opinions, the earliest opinion must be followed . . . ." (citations and internal quotation marks omitted)).

*See* U.S. Const. art. III, § 2 (creating diversity jurisdiction); The Federalist No. 80 (Alexander Hamilton).

Given its failure to address this weighty concern, I would find that the district court abused its discretion and would remand for consideration of J&J's forum-shopping argument. Although I believe this alone is a sufficient basis for reversal, I also question whether the district court sufficiently addressed the other two mandatory considerations for granting voluntary dismissal under Rule 41(a)(2)—whether dismissal would result in a waste of judicial time and effort and whether it would prejudice the defendants. *See Donner*, 709 F.3d at 697. While the court is correct that a loss of tactical advantage is by itself insufficient to defeat a motion for voluntary dismissal, *see Mullen*, 770 F.3d 728, it is equally true that "a party is not permitted to dismiss merely to escape an adverse decision," *Donner*, 709 F.3d at 697 (citation and internal quotation marks omitted). As noted above, Blaes encountered various setbacks in more than two years of litigation before the district court, including the denial of his motion to compel entry and the grant of J&J's motions to strike two of his expert witnesses. Thus, just as the court concluded with respect to costs and fees, I believe a fuller explanation was required to conclude that dismissal would not waste judicial resources or impermissibly prejudice J&J.

Accordingly, I respectfully dissent from the court's decision to affirm voluntary dismissal and concur in its reversal as to the denial of J&J's motion for costs and fees.

———————————————